**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

DAVID WINDER,

Plaintiff,

-against-

OSCAR HEALTH, INC., OSCAR MANAGEMENT CORPORATION, WILL DUNHAM, AND DAVID BYTTOW,

Defendants.

Case No. 1:25-cv-08297 (JMF)

# DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Devjani H. Mishra
René Louis Macioce
LITTLER MENDELSON, P.C.
900 Third Avenue
New York, NY 10022.3298

*Attorneys for Defendants Oscar Health, Inc., Oscar Management Corporation, Will Dunham, and David Byttow*

# TABLE OF CONTENTS

**Page(s)**


PRELIMINARY STATEMENT ........................................ 1

FACTUAL ALLEGATIONS ........................................ 2

ARGUMENT ........................................ 6

I. LEGAL STANDARD ........................................ 6

II. AS A MATTER OF LAW, PLAINTIFF CANNOT MAINTAIN A CLAIM UNDER THE NYPFL AGAINST ANY DEFENDANT ........................................ 6

III. PLAINTIFF FAILS TO STATE A CLAIM UNDER THE FMLA ........................................ 7

IV. THE COMPLAINT FAILS TO STATE A CLAIM OF CAREGIVER DISCRIMINATION ........................................ 9

A. The Unspecified Comment by Defendant Byttow is, at Most, a Stray Comment. ........................................ 10

B. Plaintiff has not Identified any Comparator Who Was Treated Better Than Him. ........................................ 12

V. THE COMPLAINT FAILS TO STATE A BREACH OF CONTRACT CLAIM ........................................ 13

A. The Incorporated Documents Defeat Plaintiff's Claim ........................................ 14

B. The Complaint Fails to Plead an Enforceable Contract ........................................ 14

VI. PLAINTIFF'S CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS FAIL ........................................ 16

A. This Court Lacks Jurisdiction Over Defendant Will Dunham ........................................ 16

1. Defendant Dunham is not Subject to New York's General Jurisdiction Statute ........................................ 16

2. Defendant Dunham is not Subject to New York's Long Arm Statute ........................................ 18

3. Plaintiff Cannot Establish Jurisdiction Over Defendant Dunham Pursuant to CPLR § 302(a)(1) ........................................ 18

4. Plaintiff Cannot Establish Jurisdiction Over Defendant Dunham Pursuant to CPLR § 302(a)(2) ........................................ 19

5. Plaintiff Cannot Establish Jurisdiction Over Defendant Dunham Pursuant to CPLR § 302(a)(3) ........................................ 19

6. The Exercise of Jurisdiction is not Reasonable and Would Violate Due Process and Fairness Requirements ............ 20

B. Even if the Court Could Exercise Jurisdiction Over Both Individual Defendants, Plaintiff's Claims Against Them are Facially Insufficient ............ 21

1. Claims Pled "Upon Information and Belief" are Deficient as a Matter of Law ............ 21

2. Plaintiff Cannot Maintain an FMLA Claim Against the Individual Defendants Under the Economic Realities Test ............ 23

VII. PLAINTIFF SHOULD NOT BE ALLOWED TO FURTHER AMEND, AND DISCOVERY SHOULD BE STAYED ............ 24

A. Plaintiff Should not be Granted Further Leave to Amend as Amendment Would be Futile ............ 24

B. Discovery Should be Stayed Pending Defendants' Motion to Dismiss ............ 24

CONCLUSION ............ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albert v. Loksen*,
239 F.3d 256, 264 (2d Cir. 2001)....................14

*Allegrino v. Riskin Moscou Faltischek, P.C.*,
No. 21-484-cv, 2021 U.S. App. LEXIS 34936 (2d Cir. Nov. 24, 2021)....................22

*Am. Auto Ins. Co. v. Rest Assured Alarm Sys., Inc.*,
786 F. Supp. 2d 798 (S.D.N.Y. 2011)....................14

*Andrew v. J.P. Morgan Chase & Co.*,
783 Fed. Appx. 102 (2d Cir. 2019)....................15

*Applewhite v. N.Y.C. Dep't of Educ.*,
No. 21-cv-2928 (AMD) (CLP), 2024 U.S. Dist. LEXIS 141361 (E.D.N.Y. Aug. 8, 2024), *aff'd*, 2025 U.S. App. LEXIS 5724 (2d Cir. Mar. 12, 2025)....................9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................6, 22

*Assure Glob., LLC v. Anderson*,
763 F. Supp. 3d 476 (S.D.N.Y. 2025)....................15

*Bah v. Apple Inc.*,
19-cv-3539 (PKC), 2020 U.S. Dist. LEXIS 22867 (S.D.N.Y. Feb. 10, 2020)....................6

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)....................6, 22

*Bernstein v. Silverman*,
2024 U.S. Dist. LEXIS 135771 (N.D.N.Y. Jul. 31, 2024)....................23

*Bresciani v. Leela Mumbai-A-Kempinski Hotel*,
311 F. Supp. 2d 440 (S.D.N.Y. 2004)....................16, 17

*Bus. Exposure Reduction Grp. (BERG) Assoc., LLC v. Pershing Square Capital Mgmt., L.P.*,
549 F. Supp. 3d 318 (S.D.N.Y. 2021)....................13

*Canzona v. Atansio*,
909 N.Y.S.2d 44 (2d Dep't 2014)....................15

*Cardell Fin. Corp. v. Suchodolski Assocs.*,
No. 09-cv-6148 (VM) (MHD), 2012 U.S. Dist. LEXIS 188295 (S.D.N.Y. July 17, 2012) ....18

*Carlton v. Mystic Transp., Inc.*,
202 F.3d 129 (2d Cir. 2000)....10

*Chloe v. Queen Bee of Beverly Hills, LLC*,
616 F.3d 158 (2d Cir. 2010)....20

*Cooper v. Templeton*,
629 F. Supp. 3d 223 (S.D.N.Y. 2022), *aff'd*, No. 22-2763, 2023 U.S. App. LEXIS 14244 (2d Cir. June 8, 2023) ....12

*Cota v. Art Brand Studios, LLC*,
No. 21-cv-1518 (LJL), 2022 U.S. Dist. LEXIS 45084 (S.D.N.Y. Mar. 14, 2022) ....25

*Crawford v. Bronx Cmty. Coll.*,
No. 22-cv-1062 (PGG) (SLC), 2024 U.S. Dist. LEXIS 152068 (S.D.N.Y. Aug. 21, 2024) ....7

*Cuoco v. Moritsugu*,
22 F.3d 99 (2d Cir. 2000) ....24

*De Petris v. Union Settlement Ass'n, Inc.*,
86 N.Y.2d 406 (N.Y. 1995) ....15

*Dechberry v. New York City Fire Dep't*,
124 F. Supp. 2d 131 (E.D.N.Y. 2015) ....9

*DeLorenzo v. Viceroy Hotel Grp., LLC*,
757 F. App'x 6 (2d Cir. 2018) ....16

*Ellis v. Chao*,
336 F.3d 114 (2d Cir. 2003)....24

*Etienne v. MTA N.Y. City Tr. Auth.*,
223 A.D.3d 612 (1st Dep't 2024) ....12

*Farooq v. City of New York*,
No. 20-3185, 2022 U.S. App. LEXIS 6739 (2d Cir. Mar. 16, 2022) ....8

*Gehlaut v. N.Y. City Dep't of Educ.*,
No. 22-CV-7862 (AMD) (LB), 2024 U.S. Dist. LEXIS 20751 (E.D.N.Y. Feb. 6, 2024), *aff'd*, No. 24-1741, 2025 U.S. App. LEXIS 23110 (2d Cir. Sept. 8, 2025) ....7

*Gilbert v. Indeed, Inc.*,
No. 20-cv-3826 (LJL), 2021 U.S. Dist. LEXIS 9717 (S.D.N.Y. Jan. 19, 2021) ....................17

*Gilford v. NYS Office of Mental Health*,
No. 17-cv-8033 (JPO), 2019 U.S. Dist. LEXIS 38450 (S.D.N.Y. Mar. 11, 2019) ....................8

*Goldstein v. Pataki*,
516 F.3d 50 (2d Cir. 2008)....................6

*Graham v. Long Island R.R.*,
230 F.3d 34 (2d Cir. 2000)....................12

*Graham v. Macy's, Inc.*,
No. 14-cv-3192 (PAE), 2016 U.S. Dist. 10269 (S.D.N.Y. Jan. 28, 2016) ....................8

*Graziadio v. Culinary Inst. of America*,
817 F.3d 415 (2d Cir. 2016)....................23

*Hamilton v. N.Y. State the Office of the State Comptroller*,
No. 23-cv-0577 (TJM/CFH), 2023 U.S. Dist. LEXIS 184158 (N.D.N.Y. Oct. 13, 2023),
*report and recommendation adopted*, 2024 U.S. Dist. LEXIS 28247 (N.D.N.Y., Feb. 20, 2024) ....................6

*Henry v. NYC Health & Hosps. Corp.*,
18 F. Supp. 3d 396 (S.D.N.Y. 2014)....................11

*Henry v. Wyeth Pharmaceutical, Inc.*,
616 F.3d 135 (2d Cir. 2010)....................11

*Hollander v. Am. Cynamid Co.*,
895 F.2d 80 (2d Cir. 1990)....................8

*Holt v. KMI-Continental, Inc.*,
95 F.3d 123 (2d Cir. 1996)....................7

*Int'l Shoe Co. v. Washington*,
326 U.S. 310 (1945)....................16, 20

*Jackson v. City of New York*,
29 F. Supp. 3d 161 (E.D.N.Y. 2014) ....................10

*Joglo Realties, Inc. v. Dep't of Envtl. Conversation of N.Y.*,
No. 16-cv-1666 (ARR) (CLP), 2016 U.S. Dist. LEXIS 195745 (E.D.N.Y. Oct. 17, 2016) ....................25

*Khwaja v. Jobs to Move Am.*,
No. 19-cv-07070 (GBD) (SDA), 2019 U.S. Dist. LEXIS 197982, (S.D.N.Y. Nov. 13, 2019),
*report and recommendation adopted*, 2020 U.S. Dist. LEXIS 70425 (S.D.N.Y. Apr. 2020)....................6

*Kramer v. Time Warner Inc.*,
937 F.2d 767 (2d Cir. 1991)....................3

*Kramer v. Vogl*,
17 N.Y.2d 27, 267 N.Y.S.2d 900 (1966)....................19

*Kunda v. Caremark PhC, LLC*,
119 F. Supp. 3d 56 (E.D.N.Y. 2015)....................14

*Landau v. New Horizon Partners, Inc.*,
No. 02 Civ. 6802 (JGK), 2003 U.S. Dist. LEXIS 15999 (S.D.N.Y. Aug. 22, 2003)....................19

*Langenkamp v. Olson*,
628 Fed. Appx. 50 (2d Cir. 2015)....................15

*Leibowitz v. Cornell Univ.*,
584 F.3d 487 (2d Cir. 2009)....................10

*Leonard F. v. Isr. Disc. Bank of N.Y.*,
199 F.3d 99 (2d Cir. 1999)....................2

*Lobosco v. NY Tel. Co./Nynex*,
96 N.Y.2d 312 (N.Y. 2001)....................15

*Lopez v. Advantage Plumbing & Mech Corp.*,
No. 15-cv-4507 (AJN), 2016 U.S. Dist. LEXIS 43608 (S.D.N.Y. Mar. 30, 2016)....................22

*Maragh v. Roosevelt Island Operating Corp.*,
2021 U.S. Dist. LEXIS 147091 (S.D.N.Y. Aug. 5, 2021)....................10

*Melman v. Montefiore Med. Ctr.*,
946 N.Y.S. 2d at 40-41 (1st Dep't 2012)....................9

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
84 F.3d 560 (2d Cir. 1996)....................21

*Mihalik v. Credit Agricole Cheuvreaux N. Am., Inc.*,
715 F.3d 102 (2d Cir. 2013)....................9

*Mirinaviciene v. Keuka Coll.*,
No. 24-1006, 2025 U.S. App. LEXIS 5725 (2d Cir. Mar. 12, 2025) ................................12, 13

*Murray v. Visting Nurse Servs.*,
528 F. Supp. 2d 257 (S.D.N.Y. 2007)..........................................................................8

*Novick v. Vill. Of Wappingers Falls*,
376 F. Supp. 3d 318 (S.D.N.Y. 2019)..........................................................................12

*Orlander v. Staples, Inc.*,
802 F.3d 289 (2d Cir. 2015)........................................................................................13

*Pappas v. City of New York*,
No. 23-cv-06010 (LJL), 2024 U.S. Dist. LEXIS 14171 (S.D.N.Y. Jan. 26, 2024) ...............................................................................................................24

*Paupaw-Myrie v. Mount Vernon City Sch. Dist.*,
653 F. Supp. 3d 80 (S.D.N.Y. 2023)............................................................................11

*Perry v. NYSARC, Inc.*,
424 Fed. Appx. 23 (2d Cir. 2011) ..............................................................................7, 8

*(RC) 2 Pharma Connect, LLC c. Mission Pharmacal Co.*,
No. 21-cv-11096 (LJL), 2022 U.S. Dist. LEXIS 117962 (S.D.N.Y. Jul. 5, 2022) ...............................................................................................................15

*Redcell Corp. v. A.J. Trucco*,
No. 20-cv-00018 (AT) (ALC), 2022 U.S. Dist. LEXIS 41064 (S.D.N.Y. Mar. 8, 2022) ...............................................................................................................16

*Reddington v. Staten Island Univ. Hosps.*,
511 F.3d 126 (2d Cir. 2007)........................................................................................14

*Richards v. City of New York*,
No. 19-cv-10967 (MKV), 2021 U.S. Dist. LEXIS 185647 (S.D.N.Y. Sept. 28, 2021) ...............................................................................................................11

*Rush v. Savchuk*,
444 U.S. 320 (1980)....................................................................................................21

*Sealy v. State Univ. of N.Y.*,
834 F. App'x 611 (2d Cir. 2020) ..................................................................................8

*Shah v. Wilco Sys., Inc.*,
27 A.D.3d 169 (1st Dep't 2003) ..................................................................................12

*Sheridan v. New York Life Inv. Mgmt., LLC*,
No. 09-cv-4746 (KBF), 2012 U.S, LEXIS 18525 (S.D.N.Y. Feb. 9, 2012)...........................11

*Singa v. Corizon Health, Inc.*,
No. 17-cv-4482 (BMC), 2018 U.S. Dist. LEXIS 3326 (E.D.N.Y. Jan. 8, 2018) ....................22

*Sirohi v. Trustees of Columbia Univ.*,
No. 97-7912, 1998 U.S. App. LEXIS 22519 (2d Cir. Apr. 16, 1998)....................................15

*Smalls v. Allstate Ins. Co.*,
396 F. Supp. 2d 364 (S.D.N.Y. 2005)..........................................................................10

*Syeed v. Bloomberg L.P.*,
568 F. Supp. 3d 314 (S.D.N.Y. 2021)............................................................................9

*Symotyuk-Knoll v. HealthEquity, Inc.*,
No. 21-cv-08348 (ALC), 2023 U.S. Dist. LEXIS 152061 (S.D.N.Y. Aug. 29, 2023) ..........................................................................................................12

*Trisvan v. Heyman*,
305 F. Supp. 3d 381 (E.D.N.Y. 2018) ..........................................................................18

*Verzani v. Costco Wholesale Corp.*,
641 F. Supp. 2d 291 (S.D.N.Y. 2009)............................................................................2

*Wallace Church & Co. v. WyattZier, LLC*,
No. 20-cv-01914 (CM), 2020 U.S. Dist. LEXIS 135529 (S.D.N.Y. July 30, 2020) ..........................................................................................................17

*Williams v. N.Y. Dep't of Corr.*,
No. 19-cv-5200 (RA), 2021 U.S. Dist. LEXIS 41715 (S.D.N.Y. Mar. 5, 2021)....................22

*Woolf v. Strada*,
792 Fed. Appx. 143 (2d Cir. 2020)................................................................................7

*Xiu Feng Li v. Hock*,
371 F. App'x 171 (2d Cir. 2010) ..................................................................................6

**Statutes**

42 U.S.C. § 1981..........................................................................................................22

CPLR § 301...........................................................................................................16, 18

CPLR § 302...........................................................................................................16, 18

CPLR § 302(a) ..............................................................................................................18

CPLR § 302(a)(1) .........................................................................................................18

CPLR § 302(a)(2) .....................................................................................................18, 19

CPLR § 302(a)(3) ....................18, 19

Family Medical Leave Act (FMLA).................... *passim*

New York City Human Rights Law (NYCHRL) ....................1, 9, 22

New York's Paid Family Leave Law (NYPFL) ....................1, 6, 7, 24

N.Y.C. Admin. Code § 8-102 ....................9

N.Y. Workers' Comp. L. § 221 ....................7

**Other Authorities**

Fed. R. Civ. P. 1 ....................25

Fed. R. Civ. P. 4(k)(1)(A) ....................16

F.R.C.P. 12(b)(2) ....................1, 6

F.R.C.P. 12(b)(6) .................... *passim*

Fed. R. Civ. P. 15(a) ....................24

Fed. R. Civ. P. 16(b)(4)....................24

**PRELIMINARY STATEMENT**

Defendants Oscar Health, Inc, Oscar Management Corporation (collectively, "Oscar") and Will Dunham[1], submit this Memorandum of Law in Support of their Motion to Dismiss Plaintiff David Winder's Amended Complaint. (*See* Amended Complaint, ECF No. 13 ("Am. Compl."). As set forth below, Plaintiff's claims should be dismissed in full pursuant to F.R.C.P. 12(b)(2) and 12(b)(6).

First, Plaintiff's claim under New York's Paid Family Leave Law ("NYPFL") is barred by the exclusivity provisions of the Workers' Compensation Law and therefore cannot be maintained in this Court.

Second, Plaintiff's allegations that he was terminated during an already granted leave of absence do not state a cognizable claim of interference under the Family Medical Leave Act ("FMLA").

Third, Plaintiff's claim of caregiver discrimination under the New York City Human Rights Law ("NYCHRL") fails because Plaintiff does not allege facts giving rise to an inference of discrimination. He identifies no derogatory comments directed at his caregiver status, and his conclusory allegations about his purported comparator are insufficient as a matter of law.

Fourth, Plaintiff fails to state a breach of contract claim. He fails to allege the existence of any contract or its essential terms, and his theory contradicts New York's well-established at-will employment doctrine. Regardless of these pleading deficiencies, a review of the documents which Plaintiff incorporates by reference into the Complaint shows that they foreclose any claim for breach of contract.

Fifth, the Court lacks personal jurisdiction over Defendant Will Dunham, who resides in Massachusetts and has never performed work in New York in connection with Plaintiff's employment.

---

[1] Per this Court's order, Defendant David Byttow has until March 11, 2026, to respond to the Amended Complaint. (*See* ECF No. 15)

Finally, the Amended Complaint does not allege that either Individual Defendant took any adverse action against Plaintiff, exercised control over his employment, or otherwise could be held individually liable under any statute Plaintiff invokes.

As there are no facts that could save Plaintiff's procedurally barred and/or factually insufficient claims, Plaintiff should not be granted the opportunity to amend his pleading because such amendment would be futile. As such, and for the reasons explained fully herein, Defendants request this Court dismiss the Amended Complaint in full, with prejudice.

## FACTUAL ALLEGATIONS

Plaintiff was hired by, and worked for, Oscar Management Corporation ("OMC") from February 28, 2022, until August 5, 2025. (*See* Am. Compl. at ¶¶ 19, 21, 54-55; *see also* Offer Letter,[2] attached to the Declaration of Sara Augustus ("Augustus Decl.") as **Exhibit A**). Plaintiff's Offer Letter explicitly provided that Plaintiff's "employment with the Company will be 'at will,' meaning that either you or the Company may terminate your employment at any time and for any reason, with or without cause." (**Ex. A** at p. 3). In March of 2024, Plaintiff was promoted to Senior Director of Engineering. (*See* Am. Compl. at ¶ 31). Plaintiff alleges that in that role, he "oversaw three of the five teams in the Infrastructure Department and informally oversaw the entire department for prolonged periods of time." (*Id*. at ¶ 32)

Plaintiff alleges that he was entitled to Restricted Stock Units ("RSU") in exchange for his continued employment. (*See id*. at ¶ 23). At the beginning of his employment, Plaintiff received a grant under Oscar's Incentive Award Plan (the "Plan"). (*See* Oscar Health, Inc. 2021 Incentive Award Plan Prospectus, attached to the Augustus Decl. as **Exhibit B**.)[3] Importantly, the Plan

---

[2] Because the purported promises made to Plaintiff at the time of his hire by OMC are integral to Plaintiff's claim for breach of contract, the Court may consider the Offer Letter in deciding the motion to dismiss. *See Verzani v. Costco Wholesale Corp.*, 641 F. Supp. 2d 291, 297-98 (S.D.N.Y. 2009) ("[W]here the claim is for breach of contract, the complaint is deemed to incorporate the contract by reference because the contract is integral to the plaintiffs' claim.").

[3] This document is incorporated by reference in the Complaint, which expressly refers to the "contract" allegedly entered into concerning stock grants. (*See* Am. Compl. at ¶¶ 23-26). Thus, the Court may consider this document in deciding the Motion to Dismiss. *See Leonard F. v. Isr.*

plainly sets out that Plaintiff would be required to forfeit unvested shares if he were to be terminated:

> The conditions to which restrictive stock is subject may be based on continuing employment or service or the holder's or Company's achieving performance goals. Upon termination of such service or employment or the failure to attain applicable performance goals, the holder must forfeit unvested shares and the Company may cancel them without consideration.

(**Ex. B** at p. 4). Furthermore, the Award Plan is clear that a grant of RSUs does not change the at-will nature of the employment relationship:

> No person will have any claim or right to be granted an award under the Plan and the grant of an award will not give the holder any right to continued employment or any other relationship with the Company and will not interfere with or restrict in any way the Company's right to discharge any holder of an award at any time.

(**Ex. B** at p. 5).

As Plaintiff notes, these RSUs vested quarterly, with a vesting cycle scheduled to conclude on September 1, 2025. (*See* Am. Compl. at ¶¶ 23-5). This is reflected in the RSU Grant Notice issued to Plaintiff in 2025. (*See* 2025 Restricted Stock Unit Grant Notice, attached to the Augustus Decl. at **Exhibit C**).[4] Like the 2021 Plan, the 2025 Notice also expressly provides that the grant does not impact the right of the company to terminate Plaintiff at any time:

---

*Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) ("In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face the complaint, in documents appended to the complaint or incorporated in the complaint by reference...."). The Court may also consider this document as Plaintiff purports it to be the basis of his claim for breach of contract. Moreover, the Plan is publicly filed with the SEC and can be easily accessed and downloaded at https://www.sec.gov/Archives/edgar/data/1568651/000119312521049832/d28906dex1011.htm, and thus the Court may take judicial notice of it. *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 773-74 (2d Cir. 1991) (permitting judicial notice of public SEC filings on a motion to dismiss).

[4] Like the offer letter, and 2021 Award Plan, this document is not only expressly referred to in the Complaint but it is integral to Plaintiff's breach of contract claim. (*See* Am. Compl. at ¶¶ 24-6).

> 4.11 Not a Contract of Employment. Nothing in the Plan, the Grant Notice or this agreement confers upon Participant any right to continue in the employ or service of the Company or any Subsidiary or interferes with or restricts in any way the rights of the Company and its Subsidiaries, which rights are hereby expressly reserved, to discharge or terminate the services of Participant at any time for any reason whatsoever, with or without cause, except to the extent expressly provided otherwise in a written agreement between the Company or a Subsidiary and Participant.

(**Ex. C** at p. 6).

Plaintiff further alleges that the Company, "through its handbook, agreed to allow Plaintiff paternity leave." (Am. Compl. at ¶ 72). Plaintiff alleges that, per the handbook, "Oscar offered and promised paternity leave as a benefit for [Plaintiff's] continued employment", and that "Oscar's promised paternity leave had no conditional language such that it was not explicitly conditioned on continued employment." (Am. Compl. at ¶¶ 97-98).

The Employee Handbook does contain a policy on Parental Leave, providing that full-time employees are eligible for 10 weeks of paid Parental Leave/Bonding. (*See* 2025 Employee Handbook, attached to the Augustus Decl. as **Exhibit D**, at p. 59).[5] Like the documents relating to the RSUs, however, the Employee Handbook also expressly states that Plaintiff's "employment at Oscar is at will. This handbook does not modify the at-will relationship in any way or otherwise create any contractual rights." (2025 Employee Handbook, attached to the Augustus Decl. as **Exhibit D**, at 73).

In March 2025, Plaintiff "announced" his intention to take paternity leave, which was "approved for the summer and fall of 2025." (Am. Compl. at ¶ 34). Plaintiff was further approved for a second leave for "bonding", which was intended to start November 10, 2025, and continue

[5] The Employee Handbook is expressly referred to in the Complaint and is the purported basis for Plaintiff's claim for breach of contract as it relates to his leave of absence. (*See* Am. Compl. at ¶ 72).

until January 2026. (*See id.* at ¶¶ 46-47). Plaintiff began his leave on July 18, 2025. (*See id.* at ¶ 43).

Plaintiff alleges that, at an unspecified time after his March 2025 announcement, he spoke to Defendant Byttow who, *after being asked*, shared that he himself had not taken time off when his daughter was born. (*See id.* at ¶¶ 36-39). Plaintiff does not provide the actual substance of Defendant Byttow's comment but alleges that he interpreted it as "incredibly dismissive" and as "insinuate[ing] to Plaintiff that men should not take time off work to care for [a] spouse or new-born child." (*Id.* ¶ 40). Plaintiff further avers that, "[u]pon information and belief" the decision to terminate him "was made immediately after his announcement of paternity leave" and that he "understands, from colleagues, that the decision to terminate him" was made sometime before he took his leave. (*Id.* ¶¶ 41-42)

On or about July 28, 2025, Gregory Chagnon began working for the Company. (*See id.* at ¶ 50). Although Mr. Chagnon admittedly "was given a different title than Plaintiff," Plaintiff – without any support – alleges that Mr. Chagnon "performed the exact same role as Plaintiff by managing the Infrastructure Department." (*Id.* at ¶ 51). Plaintiff also asserts that he "did more work than what Mr. Chagnon was hired to do" and that he "earned a lower base pay, lower bonus, and held a lower title than Mr. Chagnon." (*Id.* at ¶¶ 65-66).

On August 5, 2025, Plaintiff was terminated along with "many [other] employees in the Operations organization" due to a reduction in force. (*Id.* at ¶¶ 54-57). Plaintiff claims, however, that he "was the only member of his direct and indirect reporting structure that was terminated." (*Id.* at ¶ 57). Plaintiff further alleges – again without support – that "Defendants knew that Plaintiff would have a young child at home following his leave" and that this meant that "Defendants held a perspective that he would be distracted at work when he returned." (*Id.* ¶ 59). Plaintiff also asserts, "[u]pon information and belief," that Defendant Will Dunham, Senior Employment Counsel, "was aware of Plaintiff's paternity leave and approved his termination," and that Plaintiff's supervisor, Defendant David Byttow, "requested Plaintiff be permanently replaced by Chagnon." (*Id.* at ¶¶ 76, 78). Plaintiff thus speculates that the two men "conspired to terminate

Plaintiff because of his status as a new parent, and exercise of contractual and statutory rights to paternity leave." (*Id*. at ¶ 79).

## ARGUMENT

### I. LEGAL STANDARD

On a 12(b)(2) motion to dismiss, the "plaintiff carries the burden of demonstrating that jurisdiction exists." *Xiu Feng Li v. Hock*, 371 F. App'x 171, 173-74 (2d Cir. 2010). Although courts must accept the plaintiff's allegations as true, courts are authorized to decide a Rule 12(b)(2) motion to dismiss on the basis of affidavits alone. *See Bah v. Apple Inc.*, 19-cv-3539 (PKC), 2020 U.S. Dist. LEXIS 22867, at *8 (S.D.N.Y. Feb. 10, 2020) ("A district court may rely on affidavits without converting a Rule 12(b)(2) motion into a motion for summary judgment.").

To survive a Rule 12(b)(6) motion to dismiss, the Complaint must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[A]t a bare minimum, the operative standard requires the plaintiff [to] provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (quotations and citations omitted)); *see also Twombly*, 550 U.S. at 555 (the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level.").

### II. AS A MATTER OF LAW, PLAINTIFF CANNOT MAINTAIN A CLAIM UNDER THE NYPFL AGAINST ANY DEFENDANT

Plaintiff's first cause of action is for an alleged violation of the NYPFL (Am. Compl. at ¶¶ 83-93).[6] It is well-established, however, that "[a] Plaintiff cannot pursue remedies for retaliation or discrimination under the New York Paid Family Leave law by commencing an action in Federal

---

[6] Despite being notified that the NYPFL claim is not actionable in this Court through Defendants' original motion, Plaintiff inexplicably added an equally non-actionable NYPFL retaliation claim.

Court and must instead seek h[is] remedies under the Workers' Compensation law." *Hamilton v. N.Y. State the Office of the State Comptroller*, No. 23-cv-0577 (TJM/CFH), 2023 U.S. Dist. LEXIS 184158, at *10 (N.D.N.Y. Oct. 13, 2023), *report and recommendation adopted*, 2024 U.S. Dist. LEXIS 28247 (N.D.N.Y. Feb. 20, 2024); *see also Khwaja v. Jobs to Move Am.*, No. 19-cv-07070 (GBD) (SDA), 2019 U.S. Dist. LEXIS 197982, at *25 (S.D.N.Y. Nov. 13, 2019), *report and recommendation adopted*, 2020 U.S. Dist. LEXIS 70425 (S.D.N.Y. Apr. 2020) ("To the extent that Plaintiff is asserting any rights under the New York Paid Family Leave Benefits law, those rights cannot be pursued in this court.") (citing N.Y. Workers' Comp. L. § 221).

Plaintiff alleges that he "was entitled to up to 12 weeks of leave at 67% of average weekly wage" and that he was "entitled to job protected leave." (Am. Compl. at ¶¶ 87-88). Even accepting these allegations as true, Plaintiff's theory effectively suggests that the birth of his child insulated him from the termination of his employment, which it does not. Regardless, Plaintiff cannot maintain a private claim under the NYPFL, as such relief lies outside this court's jurisdiction.

## III. PLAINTIFF FAILS TO STATE A CLAIM UNDER THE FMLA

To state a claim of FMLA retaliation, Plaintiff must allege that he (1) engaged in activity protected by the FMLA; (2) his employer was aware of this activity; (3) the employer subjected Plaintiff to an adverse employment action; and (4) a causal connection exists between that adverse action and the protected activity. *See Woolf v. Strada*, 792 Fed. Appx. 143, 145 (2d Cir. 2020). The act of seeking leave pursuant to the FMLA constitutes protected activity under that statute. *See Crawford v. Bronx Cmty. Coll.*, No. 22-cv-1062 (PGG) (SLC), 2024 U.S. Dist. LEXIS 152068, at *42-43 (S.D.N.Y. Aug. 21, 2024).

Importantly, "[i]n order to establish FMLA retaliation, a plaintiff must show 'a causal connection between the protected activity and the adverse employment action.'" *Perry v. NYSARC, Inc.*, 424 Fed. Appx. 23, 26 (2d Cir. 2011) (quoting *Holt v. KMI-Continental, Inc.*, 95 F.3d 123, 130 (2d Cir. 1996)). "A causal connection in retaliation claims can be shown either (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who

engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gehlaut v. N.Y. City Dep't of Educ.*, No. 22-CV-7862 (AMD) (LB), 2024 U.S. Dist. LEXIS 20751, at *13 (E.D.N.Y. Feb. 6, 2024) (internal quotes and citation omitted), *aff'd*, No. 24-1741, 2025 U.S. App. LEXIS 23110 (2d Cir. Sept. 8, 2025) (summary order). "[W]hile there is no bright-line rule," where a Plaintiff relies upon temporal proximity to establish a causal connection, "two months generally sets the outer boundary". *Graham v. Macy's, Inc.*, No. 14-cv-3192 (PAE), 2016 U.S. Dist. 10269, at *28 (S.D.N.Y. Jan. 28, 2016); *see also Murray v. Visting Nurse Servs.*, 528 F. Supp. 2d 257, 275 (S.D.N.Y. 2007) ("[D]istrict courts within the Second Circuit have consistently held that the passage of two to three months between the protected activity and the adverse employment action does not allow for an inference of causation.").

Plaintiff's only allegedly protected activity was having "announced" his intention to take "paternity leave in March 2025". (Am. Compl. at ¶ 34). He was terminated approximately five (5) months later in August 2025 in connection with a companywide reduction in force. (*Id*. at ¶ 54-57). This temporal gap is too long to support a retaliation claim. *See Perry*, 424 Fed. Appx. at 26 ("conclud[ing] that even a four-month interval between protected activity and alleged retaliation is insufficient in itself to establish the causal connection necessary to support a retaliation claim.") (citing *Hollander v. Am. Cynamid Co.*, 895 F.2d 80, 85-86 (2d Cir. 1990)); *see also Farooq v. City of New York*, No. 20-3185, 2022 U.S. App. LEXIS 6739, at *10 (2d Cir. Mar. 16, 2022) (affirming dismissal as "[t]he five-month gap here, standing alone, is insufficient to plead causation") (summary order); *Sealy v. State Univ. of N.Y.*, 834 F. App'x 611, 614 (2d Cir. 2020) (holding that four months "is simply too long of a gap to give rise to an inference of retaliation").

Presumably aware of this pleading deficiency, in his Amended Complaint, Plaintiff now alleges that, "[u]pon information and belief, the decision to terminate [him] was made immediately after his announcement of paternity leave" and that he "understands, from colleagues, that the

decision to terminate him was made before he formally went out on leave."[7] (Am. Compl. at 41-42). As discussed below (*see* Point VI(B)(1)), allegations made upon information and belief are insufficient to withstand a motion to dismiss. *See Gilford v. NYS Office of Mental Health*, No. 17-cv-8033 (JPO), 2019 U.S. Dist. LEXIS 38450, at *12 (S.D.N.Y. Mar. 11, 2019) (dismissing retaliation claim where allegations were "based 'upon information and belief.'"). Regarding the hearsay statements attributed to unnamed colleagues, Plaintiff further fails to specify what these colleagues told him, or when he spoke to them.

Even if the Court finds such a conclusory allegation sufficient, Plaintiff has not alleged the specific date that his termination was purportedly decided and "simply pleading that an adverse action occurred later in time than plaintiff's protected activity is insufficient to survive a motion to dismiss." *Dechberry v. New York City Fire Dep't*, 124 F. Supp. 2d 131, 154 (E.D.N.Y. 2015); *see also Applewhite v. N.Y.C. Dep't of Educ.*, No. 21-cv-2928 (AMD) (CLP), 2024 U.S. Dist. LEXIS 141361, at *48 (E.D.N.Y. Aug. 8, 2024) (dismissing retaliation claim where Plaintiff "allege[d] that the defendants denied her requests, but not when they denied them, which mean[t] that the Court [could not] infer a sufficiently close temporal proximity"), *aff'd*, 2025 U.S. App. LEXIS 5724 (2d Cir. Mar. 12, 2025). Plaintiff's FMLA retaliation claim therefore should be dismissed.

## IV. THE COMPLAINT FAILS TO STATE A CLAIM OF CAREGIVER DISCRIMINATION

Plaintiff asserts a discrimination claim, exclusively under the NYCHRL, alleging that he was terminated because of his status as a new parent. (*See* Am. Compl. at ¶¶ 104-113). The NYCHRL bars discrimination because an individual is a "caregiver", which the statute defines as a "person who provides direct and ongoing care for a minor child or a care recipient." N.Y.C. Admin. Code § 8-102. Though the statute is construed more liberally than its state and federal

[7] Notably, Plaintiff's employment was terminated just before he was set to return to his position. It is illogical that Oscar would pay Plaintiff throughout his leave not to work, just to retaliatorily terminate as he was preparing to return.

counterparts, "district courts must be mindful that the NYCHRL is not a general civility code." *Mihalik v. Credit Agricole Cheuvreaux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013) (internal quotations omitted). To plead a claim of discrimination under the NYCHRL, Plaintiff must still allege that "unlawful discrimination was one of the motivating factors, even if it was not the sole motivating factor for h[is] unequal treatment." *Syeed v. Bloomberg L.P.*, 568 F. Supp. 3d 314, 338 (S.D.N.Y. 2021) (quoting *Melman v. Montefiore Med. Ctr.*, 946 N.Y.S. 2d at 40-41 (1st Dep't 2012)). To do this, Plaintiff must either allege the existence of derogatory statements made by decision makers and/or the existence of individuals outside of his protected class who are similarly situated to him and who were treated better. *See Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009).

### A. The Unspecified Comment by Defendant Byttow is, at Most, a Stray Comment.

Plaintiff alleges that, sometime around Plaintiff's announcement to take leave in March 2025, he asked Defendant Byttow "whether he had taken any time off for the birth of his daughter." (Am. Compl. at ¶ 38). Defendant Byttow responded that he had not. Defendant Byttow's response, Plaintiff avers, was "dismissive and insinuated to Plaintiff that men should not take time off work to care for [a] spouse or new-born child."[8] (Am. Compl. at ¶ 40).

However, Plaintiff never pleads what Defendant Byttow said. Instead, he offers only his own subjective interpretation of an unspecified comment and "insinuation." Courts consistently hold that a plaintiff's subjective belief, speculation, or "gut-feeling", without more "is not sufficient to create an inference of discrimination." *Jackson v. City of New York*, 29 F. Supp. 3d 161, 172 (E.D.N.Y. 2014); *see also Smalls v. Allstate Ins. Co.*, 396 F. Supp. 2d 364, 371 (S.D.N.Y. 2005) ("[A] plaintiff's speculations, generalities, and gut feelings, however genuine, when they are not supported by specific facts, do not allow for an inference of discrimination to be drawn."); *Maragh v. Roosevelt Island Operating Corp.*, 2021 U.S. Dist. LEXIS 147091, at *16 (S.D.N.Y.

---

[8] It should be further noted that Plaintiff does not allege that Byttow's daughter was born during his employment with Oscar.

Aug. 5, 2021) (on a motion for summary judgment, where Plaintiff alleged that Defendant "insinuated stuff", the Court held that "[a] plaintiff's insinuation and speculation do not a prima facie case of discrimination make.") . Because Plaintiff alleges no actual discriminatory statement, but rather, his personal interpretation of an unspecified remark, this allegation is not enough to support an inference of discrimination.

Assuming, *arguendo*, that the court were to find that an unspecified comment was indicative of discriminatory animus, it is but a "stray comment" which remains insufficient to plead a claim of discrimination. *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 136 (2d Cir. 2000). In determining whether or not a comment is "stray", courts consider the following factors: "(1) who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark… and (4) the context in which the remark was made (i.e., whether it was related to the decision-making process." *Henry v. Wyeth Pharmaceutical, Inc.*, 616 F.3d 135, 149 (2d Cir. 2010). Courts in this circuit regularly dismiss discrimination claims predicated on stray remarks at the pleading stage. *See*, *e.g.*, *Paupaw-Myrie v. Mount Vernon City Sch. Dist.*, 653 F. Supp. 3d 80, 98 (S.D.N.Y. 2023); *Richards v. City of New York*, No. 19-cv-10967 (MKV), 2021 U.S. Dist. LEXIS 185647, at *19 (S.D.N.Y. Sept. 28, 2021); *Henry v. NYC Health & Hosps. Corp.*, 18 F. Supp. 3d 396, 411 (S.D.N.Y. 2014).

Here, Plaintiff does not allege that Defendant Byttow was the decision-maker with respect to his termination, and, in fact, concedes that his separation occurred as part of a reduction in force. Even accepting Plaintiff's allegations as true, he was not terminated until roughly five months after the alleged conversation. *See Sheridan v. New York Life Inv. Mgmt., LLC*, No. 09-cv-4746 (KBF), 2012 U.S, LEXIS 18525, at *20 (S.D.N.Y. Feb. 9, 2012) (comment made four months prior to adverse action not probative for inference of discrimination). Again, the purported remark is neither quoted nor described with any specificity and Plaintiff offers only his subjective interpretation thereof. *See Paupaw-Myri*, 653 F. Supp. 3d at 97-98 (purported "inappropriate comment about the texture of [Plaintiff's] hair", which Plaintiff took as "a comment about [her]

national origin" was a stray remark). Therefore, at most, this is a stray comment which is not sufficient to plead an inference of discrimination.

### B. Plaintiff has not Identified any Comparator Who Was Treated Better Than Him.

Plaintiff also asserts that a newly hired co-worker, Gregory Chagnon, whom he speculates "does not have young children at home," performed the same role as Plaintiff, despite Mr. Chagnon holding an entirely different title. (Am. Compl. at ¶¶ 51, 108). At the same time, Plaintiff alleges that his own responsibilities were broader than Mr. Chagnon's, stating that he "did more work for Oscar than what Mr. Chagnon was hired to do." (Am. Compl. at ¶ 65).

Even assuming, *arguendo*, that Mr. Chagnon assumed some of Plaintiff's duties during his leave, Plaintiff cannot plausibly construe Oscar's assignment of responsibilities during his approved leave as evidence of discrimination. *See Symotyuk-Knoll v. HealthEquity, Inc.*, No. 21-cv-08348 (ALC), 2023 U.S. Dist. LEXIS 152061, at *12 (S.D.N.Y. Aug. 29, 2023) ("Plaintiff cannot both be granted leave and construe Defendants' responsible delegation of h[is] duties during that leave as an inference of discrimination."). Regardless, however, Plaintiff's allegations fail to establish Mr. Chagnon as a valid comparator.

To survive a motion to dismiss by reference to a comparator who was allegedly treated better, Plaintiff must "demonstrate that []he and h[is] colleague were 'similarly situated in all material respects.'" *Etienne v. MTA N.Y. City Tr. Auth.*, 223 A.D.3d 612, 613 (1st Dep't 2024) (quoting *Shah v. Wilco Sys., Inc.*, 27 A.D.3d 169, 177 (1st Dep't 2003)), lv. denied 7 N.Y.3d 869 (N.Y. 2006)); *see also Mirinaviciene v. Keuka Coll.*, No. 24-1006, 2025 U.S. App. LEXIS 5725, at *3 (2d Cir. Mar. 12, 2025) ("Alleged comparators must be 'similarly situated' to the plaintiff 'in all material respects.'") (summary order). "What constitutes 'all material respects' varies from cases to case, but 'the standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases.'" *Mirinaviciene*, 2025 U.S. App. LEXIS 5725 at *3 (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000)). Generally, failing to plead adequate facts that the comparators were similarly situated "in terms of

position, seniority, job responsibilities, business unit, performance, [and] length of experience" renders a claim insufficient to survive a motion to dismiss. *Cooper v. Templeton*, 629 F. Supp. 3d 223, 231 (S.D.N.Y. 2022), *aff'd*, No. 22-2763, 2023 U.S. App. LEXIS 14244 (2d Cir. June 8, 2023); *see also Novick v. Vill. Of Wappingers Falls*, 376 F. Supp. 3d 318, 343 (S.D.N.Y. 2019) ("Plaintiff nonetheless fails to allege how or why a Lieutenant—an officer with a different job title—is similarly situated to a Detective or Patrol Officer.").

As noted above, Plaintiff concedes that Mr. Chagnon held a different title and performed both fewer and different duties than Plaintiff did. Further, Plaintiff offers no factual basis, beyond speculation based on age, for his assertion that Mr. Chagnon is not a parent or caregiver. Accordingly, "there are no alleged facts from which one might plausibly infer that the replacement was similarly situated in all material respects. "As such, no inference of discrimination can be drawn." *Mirinaviciene*, 2025 U.S. App. LEXIS 5725, at *3. Further undermining the plausibility of Plaintiff's claim is his admission that, on the same day he was terminated, "many employees in the Operations organization were terminated", a group almost certainly including multiple individuals who neither qualified as caregivers under the statute nor were on FMLA leave to care for a newborn or other family member. (Am. Compl. at ¶ 55). Ultimately, Plaintiff does not sufficiently allege that he was treated worse than any similarly-situated comparator, and his discrimination claim must be dismissed.

## V. THE COMPLAINT FAILS TO STATE A BREACH OF CONTRACT CLAIM

To plead a breach of contract claim "under New York law, the complaint must allege: (i) the formation of a contract between the parties; (ii) performance by the Plaintiff; (iii) failure of Defendant to perform; and (iv) damages." *Orlander v. Staples, Inc.*, 802 F.3d 289, 294 (2d Cir. 2015) (internal quotations omitted). Here, Plaintiff posits a "contract" under which, in exchange for his continued employment, he was owed stock. (*See* Am. Compl. at ¶¶ 22-29, 96). He further alleges that the employee handbook, which provided a leave policy, created a contract promising such leave. (*See id*. at ¶ 72). By terminating his employment, he argues, Defendants breached these promises. These allegations fail as a matter of law.

### A. The Incorporated Documents Defeat Plaintiff's Claim

The documents incorporated by reference in the complaint render Plaintiff's claims meritless. "Where the question of liability turns on applying the unambiguous language of a contract to undisputed facts, granting a motion to dismiss is appropriate." *Bus. Exposure Reduction Grp. (BERG) Assoc., LLC v. Pershing Square Capital Mgmt., L.P.*, 549 F. Supp. 3d 318, 325 (S.D.N.Y. 2021); *see also Am. Auto Ins. Co. v. Rest Assured Alarm Sys., Inc.*, 786 F. Supp. 2d 798, 803 (S.D.N.Y. 2011) ("Because contract interpretation is generally a question of law, it is suitable for disposition on a motion to dismiss."). Here, the Offer Letter made clear that Plaintiff's employment would be at-will and the RSU agreements include unambiguous language, disclaiming any obligation of continued employment. (*See* **Ex. A** at p. 3; **Ex. B** at p. 5; **Ex. C** at p. 6). Likewise, the Employee Handbook merely states policy; it not only does not create contractual rights or guarantee employment during leave but, in fact, it expressly provides that it does not do so. (*See* **Ex. C** at p. 73). *See Kunda v. Caremark PhC, LLC*, 119 F. Supp. 3d 56, 61-62 (E.D.N.Y. 2015) (granting motion to dismiss breach of contract claim predicated on failure to follow internal policies because the employment handbook state that "the contacts of this handbook are guidelines only" and "neither this handbook nor any other company guidelines, policies or practices create an employment contract."). Plaintiff's contract claim fails on the face of the cited documents.

### B. The Complaint Fails to Plead an Enforceable Contract

Even assuming, *arguendo*, that the Court confines its review to the four corners of the complaint, Plaintiff's claim still fails. Under New York law, an employment relationship is presumed to be at will absent an agreement for a fixed term. *See Albert v. Loksen*, 239 F.3d 256, 264 (2d Cir. 2001) ("New York has a well-established at-will employment doctrine: absent an agreement establishing a fixed duration, an employment relationship is presumed to be a hiring at will, terminable at any time by either party.") (internal quotations omitted). Plaintiff does not, and cannot, allege that his employment was anything other than at-will based on his vesting schedule or grants of stock. *See Reddington v. Staten Island Univ. Hosps.*, 511 F.3d 126, 138 (2d Cir. 2007) ("[Plaintiff] has not alleged sufficient facts to suggest that she was not an at-will employee, and

therefore she has not adequately alleged that the [Defendant] breached an employment contract by terminated her.”). Accordingly, the Company was free to terminate Plaintiff’s employment at any time.

Plaintiff’s reliance on the Employee Handbook is utterly unavailing. It is a fundamental principle under New York law that “[r]outinely issued employee manuals, handbooks and policy statements” do not form binding employment agreements. *Andrew v. J.P. Morgan Chase & Co.*, 783 Fed. Appx. 102, 103 (2d Cir. 2019) (quoting *Lobosco v. NY Tel. Co./Nynex*, 96 N.Y.2d 312, 317 (N.Y. 2001)). As the Court of Appeals has explained, “the ‘mere existence of a written policy… does not limit an employer’s right to discharge an at-will employee or given rise to a legally enforceable claim.’” *Langenkamp v. Olson*, 628 Fed. Appx. 50, 52 (2d Cir. 2015) (quoting *De Petris v. Union Settlement Ass’n, Inc.*, 86 N.Y.2d 406 (N.Y. 1995)).

Moreover, to successfully assert that a valid, binding contract exists between the parties, Plaintiff must allege more than a conclusory statement; rather, he must identify the parties, the essential terms, and the nature of the agreement. *See Assure Glob., LLC v. Anderson*, 763 F. Supp. 3d 476, 484 (S.D.N.Y. 2025) (explaining that to survive a motion to dismiss, a plaintiff must plead "the pertinent terms of the purported agreement"). Additionally, Plaintiff “must identify the provisions of the contract that were breached”, i.e., “the specific provisions of a contract that it alleges a defendant has violated.” *(RC) 2 Pharma Connect, LLC c. Mission Pharmacal Co.*, No. 21-cv-11096 (LJL), 2022 U.S. Dist. LEXIS 117962, at *24 (S.D.N.Y. Jul. 5, 2022) (quoting *Canzona v. Atansio*, 909 N.Y.S.2d 44, 47 (2d Dep’t 2014)).

Here, Plaintiff fails to plead the existence of an enforceable contract or any breach thereof. The Amended Complaint does not identify the parties to any alleged agreement, its essential terms, or the specific provisions purportedly breached. *See Sirohi v. Trustees of Columbia Univ.*, No. 97-7912, 1998 U.S. App. LEXIS 22519, at *5 (2d Cir. Apr. 16, 1998) (“Sirohi failed to successfully plead a breach of contract claim because he did not allege the essential terms of the parties’ purported contract ‘in nonconclusory language,’ including the specific provisions of the contract upon which liability is predicated.”). Plaintiff merely asserts that his employment was terminated

and that, had he remained employed, he would have received additional RSUs and continued paternity leave[9]. Such allegations do not state a claim for breach of contract, and this cause of action must be dismissed.

## VI. PLAINTIFF'S CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS FAIL

### A. This Court Lacks Jurisdiction Over Defendant Will Dunham

This Court lacks personal jurisdiction over Defendant Will Dunham under both general and specific jurisdiction principles. Pursuant to Federal Rule of Civil Procedure 4(k)(1)(A), personal jurisdiction may be exercised only if a defendant is "subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located."

#### 1. Defendant Dunham is not Subject to New York's General Jurisdiction Statute

New York law provides for both general and specific personal jurisdiction. Plaintiff must "demonstrate that . . . Defendant was either (1) 'present' and 'doing business' within the meaning of New York Civil Practice Law and Rules ("CPLR") § 301, or (2) that [he] committed acts within the scope of N.Y.'s long-arm statute, CPLR § 302." *DeLorenzo v. Viceroy Hotel Grp., LLC*, 757 F. App'x 6, 8 (2d Cir. 2018) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Section 301 of the CPLR allows courts to exercise general jurisdiction over "persons, property, or status as might have been exercised heretofore." N.Y.C.P.L.R. § 301. Under this provision, Defendant Dunham would be subject to suit in New York if he engaged in "such a continuous and systematic course of 'doing business' [in New York] that a finding of [his]

---

[9] Plaintiff alleges both that "Oscar offered and promised paternity leave as a benefit for his continued employment" as well as that "Oscar's promised paternity leave had no conditional language such that it was not explicitly conditioned on continued employment." (Am. Compl. at ¶¶ 97-98). On a motion to dismiss, while the court must take "well-pleaded factual allegations as true, it need not do so when such allegations are internally inconsistent or contradictory." *Redcell Corp. v. A.J. Trucco*, No. 20-cv-00018 (AT) (ALC), 2022 U.S. Dist. LEXIS 41064, at *14 (S.D.N.Y. Mar. 8, 2022). Here, Plaintiff's allegations are contradictory/confusing on their face, and it is unclear what theory he is attempting to advance. In any event, the document on which Plaintiff's purported claim rests, the Employee Handbook, reveals no contractual promise for such leave and expressly disclaims any promise of continued employment. (*See* **Ex. C**).

'presence' in this jurisdiction is warranted." *Bresciani v. Leela Mumbai-A-Kempinski Hotel*, 311 F. Supp. 2d 440, 444 (S.D.N.Y. 2004) (citations omitted). Courts may consider "whether the defendant maintains offices and bank accounts, employs agents, and regularly solicits business in New York." *Id*. However, even substantial contacts with the state can fail this test, as a defendant "must be present in New York 'not occasionally or casually, but with a fair measure of permanence and continuity.'" *Id*. The relevant time period when determining whether the defendants were "doing business" in N.Y. is "at the time the complaint was filed," rather than at the time that the cause of action arose. *Wallace Church & Co. v. WyattZier, LLC*, No. 20-cv-01914 (CM), 2020 U.S. Dist. LEXIS 135529, at *14 (S.D.N.Y. July 30, 2020). Moreover, to exercise general jurisdiction over a nonresident individual, that individual must be doing business in New York individually, rather than on behalf of a corporation. *Gilbert v. Indeed, Inc.*, No. 20-cv-3826 (LJL), 2021 U.S. Dist. LEXIS 9717, at *72 (S.D.N.Y. Jan. 19, 2021).

Plaintiff's Amended Complaint fails to allege, and the record does not support, that Defendant Dunham engaged in any individual, continuous, or systematic business activity in New York. Defendant Dunham resides in Sherborn, Massachusetts and has worked remotely from Massachusetts since he began working for Oscar Management Company in January 2022. (*See* Dunham Decl. at ¶¶ 2, 4, 7; *see also* Am. Compl. at ¶ 16 (noting that Defendant Dunham resides in Massachusetts)). Throughout his career with Oscar Management Company, Defendant Dunham has not resided in New York[10], owned property in New York, been employed in New York, or been admitted to the bar in New York State. (*See* Dunham Decl. at ¶¶ 6-8). Defendant Dunham's visits to New York since 2022 have been rare and unrelated to Plaintiff or his employment. (*See id*. at ¶ 9). Importantly, Defendant Dunham only met Plaintiff in person once, in Arizona, otherwise only conversing over virtual meetings, telephone, or through written correspondence

[10] Prior to becoming an attorney, Defendant Dunham attended Cornell University in Ithaca, New York for the purpose of his undergraduate studies between 1997 and 2002, but never became a permanent resident of New York State.

about matters unrelated to Plaintiff's own employment. (*See id*. at ¶¶ 13-14). These facts fall far short of the threshold required for this court to exercise jurisdiction over him.

### 2. Defendant Dunham is not Subject to New York's Long Arm Statute

Should Plaintiff argue that specific jurisdiction exists under New York's long-arm statute, the argument also fails because there is insufficient evidence of Defendant Dunham having purposeful contacts within the state of New York. Section 302 of the CPLR provides four grounds on which to assert specific personal jurisdiction: (1) transacting business within the state or suppling services in the state; (2) committing a tortious act within the state; (3) committing a tortious act without the state causing injury to person or property within the state if the individual (i) regularly does business in the state; or (ii) should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or (4) using or possessing real property within the state. N.Y.C.P.L.R. § 302(a). Unlike CPLR § 301, an analysis under § 302(a) focuses on the business contacts in the forum state at the time the cause of action arose, rather than when the suit is commenced. *Cardell Fin. Corp. v. Suchodolski Assocs.*, No. 09-cv-6148 (VM) (MHD), 2012 U.S. Dist. LEXIS 188295, at *53-54 (S.D.N.Y. July 17, 2012). Given that Defendant Dunham does not own any property in New York (Dunham Decl. at ¶ 8) the only relevant grounds for purposes of this analysis are CPLR §§ 302(a)(1), 302(a)(2) and 302(a)(3).

### 3. Plaintiff Cannot Establish Jurisdiction Over Defendant Dunham Pursuant to CPLR § 302(a)(1)

Section 302(a)(1) only confers jurisdiction over Defendant Dunham if he has "'exercised some control over the purposeful activity' directed in or to the state." *Trisvan v. Heyman*, 305 F. Supp. 3d 381, 393 (E.D.N.Y. 2018). Here, there is no evidence that Defendant Dunham, either in his personal or corporate capacity, solicited business in New York, individually contracted with any person in New York, or conducted any purposeful activity in New York that would otherwise constitute a business transaction while employed with the Company. Therefore, jurisdiction under

CPLR § 302(a)(1) is not permissible as Defendant Dunham has not transacted business or exercised control over any purposeful activities in New York.

**4. Plaintiff Cannot Establish Jurisdiction Over Defendant Dunham Pursuant to CPLR § 302(a)(2)**

Personal jurisdiction may exist over nonresidents if they "commit[] a tortious act within the state." CPLR § 302(a)(2). To establish such jurisdiction, however, the acts on which the plaintiff's tort claims are based must have occurred in New York. *Kramer v. Vogl*, 17 N.Y.2d 27, 31, 267 N.Y.S.2d 900, 903 (1966).

Here, the Complaint fails to identify any allegedly tortious acts by Defendant Dunham in New York (or indeed any tortious acts in any location). Accordingly, this Court has no basis for asserting personal jurisdiction over Defendant Dunham, who is not a resident of New York. As personal jurisdiction does not exist over him, all claims asserted against him should be dismissed.

**5. Plaintiff Cannot Establish Jurisdiction Over Defendant Dunham Pursuant to CPLR § 302(a)(3)**

Similarly, Plaintiff is also unable to show that specific jurisdiction is warranted under CPLR § 302(a)(3). To establish jurisdiction under § 302(a)(3), Plaintiff must show that an injury occurred in New York, and that Defendant Dunham (i) regularly engages in business or other persistent conduct in the state, or (ii) expects or should reasonably expect his acts to have consequences in the state and derives substantial revenue from interstate or international commerce.

At the very least, the Complaint must "adequately allege a tortious act committed by the defendant." *Landau v. New Horizon Partners, Inc.*, No. 02 Civ. 6802 (JGK), 2003 U.S. Dist. LEXIS 15999, at *23 (S.D.N.Y. Aug. 22, 2003). As explained in Sections I, II(B), and IV, Plaintiff has not adequately alleged any claim of interference with leave, discrimination, harassment, or retaliation against any of the Defendants. Therefore, Plaintiff has not established any tortious act, the bare minimum necessary for the Court to exercise jurisdiction over Defendant Dunham.

To the extent this Court determines that a tortious act has been sufficiently alleged, Plaintiff still cannot meet the requirements of § 302(a)(3) because he has not alleged – and cannot allege – that Defendant Dunham engaged in conduct within the state or derived substantial revenue from interstate commerce. Thus, jurisdiction is also improper under CPLR § 302(a)(3).

#### 6. The Exercise of Jurisdiction is not Reasonable and Would Violate Due Process and Fairness Requirements

Even assuming jurisdiction existed over Defendant Dunham, which it does not, the Complaint should still be dismissed because exercising jurisdiction over him would violate due process. To determine whether exercising jurisdiction is consistent with the Constitution's due process requirements, Courts must undertake both a "minimum contacts" and "reasonableness" inquiry. *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010). Under the "minimum contacts" inquiry, the Court must assess "whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction." *Id.*; *see also Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Under the "reasonableness" inquiry, the Court must assess "whether it is reasonable to exercise personal jurisdiction under the circumstances of the particular case." *Chloe*, 616 F.3d at 164. Both inquiries fail.

First, the minimum contacts inquiry fails because, as established above, Defendant Dunham has little to no contact with the state of New York and has not purposefully availed himself of the benefits of New York law.

As to the "reasonableness" analysis, courts must evaluate the following factors: "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." *Id.*

Regarding the first factor, Defendant Dunham will be burdened if he is required to litigate this case in New York. He is not a resident of New York, and he rarely travels to New York for business reasons. (*See* Dunham Decl.). Thus, this factor favors Defendant Dunham because of the

burden he would face in having to travel to and defend this suit in New York. The second and third factors do not weigh in favor of any party; Plaintiff himself does not live in New York, and New York has no special interest in providing effective means of redress for non-residents. (*See* Compl. at ¶ 35 ("Plaintiff was and is a resident of New Jersey.")).

In evaluating the fourth factor, courts "generally consider where witnesses and evidence are likely to be located." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 574 (2d Cir. 1996). This prong weighs in favor of Defendant Dunham, given that Plaintiff has not asserted any actual facts supporting liability against Defendant Dunham. Based on the lack of allegations in the Complaint, there appears to be no state where witnesses and evidence are likely to be located.

Finally, as to the fifth factor, no public policy interest is served by permitting Plaintiff to haul Defendant Dunham into Court in a state where he did not transact any business pertaining to Plaintiff and does not engage in any regular personal activity. A ruling in Plaintiff's favor would essentially require Defendant Dunham to expend resources to defend a meritless suit merely because Plaintiff, also a non-resident of New York, chose to file suit against Defendant Dunham there. This would set a dangerous precedent as it runs afoul of longstanding principles. *See Rush v. Savchuk*, 444 U.S. 320, 327 (1980) (stating that "the inquiry [for personal jurisdiction] must focus on 'the relationship among the defendant, the forum, and the litigation,'" and notably not on the plaintiff's conduct or relationship to the forum). Thus, this Court should not exercise personal jurisdiction over Defendant Dunham.

The exercise of personal jurisdiction would be unreasonable, and the Complaint against Defendant Dunham should be dismissed because Plaintiff has not provided sufficient evidence to show that this Court can exercise jurisdiction over him, or that exercising jurisdiction would comport with the constitutional guarantee of due process.

### B. Even if the Court Could Exercise Jurisdiction Over Both Individual Defendants, Plaintiff's Claims Against Them are Facially Insufficient

#### 1. Claims Pled "Upon Information and Belief" are Deficient as a Matter of Law

The allegations relating to the Individual Defendants are either conclusory or pled "upon information and belief." Specifically, Plaintiff alleges: (1) "[u]pon information and belief, Defendant Dunham was intimately involved in Plaintiff's leave approval and decision to terminate his employment" (Am. Compl. at ¶ 44); (2) that "Mr. Chagnon was onboarded to take on all of Plaintiff's job responsibilities as [sic] Oscar, at the behest of Defendants Byttow and Dunham, fully intended to terminate Plaintiff for his use of FMLA and paternity leave" (*Id*. at ¶ 53); (3) "[u]pon information and belief, Defendant Dunham was aware of Plaintiff's paternity leave and approved his termination" (*Id*. at ¶ 70); (4) "[u]pon information and belief, Defendant Byttow requested Plaintiff be permanently replaced by Mr. Chagnon" (*Id*. at ¶ 72); (4) "Defendants Dunham and Byttow conspired to terminate Plaintiff because of his status as a new parent, and exercise of contractual and statutory rights to paternity leave" (*Id*. at ¶ 73).

It is well settled that "mere speculation is not sufficient to defeat a motion to dismiss." *Allegrino v. Riskin Moscou Faltischek, P.C.*, No. 21-484-cv, 2021 U.S. App. LEXIS 34936, at *6 (2d Cir. Nov. 24, 2021) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (summary order). Moreover, "in this Circuit 'conclusory pleadings on 'information and belief' are inadequate as a matter of law to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." *Williams v. N.Y. Dep't of Corr.*, No. 19-cv-5200 (RA), 2021 U.S. Dist. LEXIS 41715, at *7 (S.D.N.Y. Mar. 5, 2021) (dismissing discrimination claim); *see also Singa v. Corizon Health, Inc.*, No. 17-cv-4482 (BMC), 2018 U.S. Dist. LEXIS 3326, at *11 (E.D.N.Y. Jan. 8, 2018) ("Alleging something 'upon information and belief' does not suffice to allege a fact under *Iqbal* and *Twombly* unless plaintiff can point to some facts that make the allegations more than pure speculation."). This standard applies to discrimination claims, including those brought under the NYCHRL. *See, e.g.*, *Lopez v. Advantage Plumbing & Mech Corp.*, No. 15-cv-4507 (AJN), 2016 U.S. Dist. LEXIS 43608, at *10 (S.D.N.Y. Mar. 30, 2016) (dismissing discrimination claims under 42 U.S.C. § 1981, NYSHRL and NYCHRL based upon allegations made upon information belief).

Plaintiff's surmise regarding the Individual Defendants' involvement and alleged motives does not nudge his claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at

570. Indeed, temporal coincidence is the only speculative basis for Plaintiff's discrimination claims against the Individual Defendants or Oscar. In other words, Plaintiff has no theory for his discrimination claims other than (a) the timing of his leave and (b) the fact that Defendant Byttow communicated the termination decision in the context of a larger reduction in force. Coincidence does not state a claim under Rule 12(b)(6). Accordingly, all claims against the Individual Defendants must be dismissed because the Complaint contains no well-pleaded factual allegations against them.

### 2. Plaintiff Cannot Maintain an FMLA Claim Against the Individual Defendants Under the Economic Realities Test

As explained *supra* (*see* Section III) Plaintiff fails to allege a claim for FMLA interference against all Defendants. However, even if the court were to find that Plaintiff has pled a viable claim for a violation under the FMLA, he cannot maintain those claims against the Individual Defendants. Under the FMLA, a Plaintiff must allege that the Individual Defendant, under the economic realities test, were considered an employer, i.e., that they: "(1) had the power to hire and fire the employee[], (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Graziadio v. Culinary Inst. of America*, 817 F.3d 415, 422 (2d Cir. 2016).

Here, Plaintiff does not allege that the Individual Defendants had the power to hire or fire him, supervised or controlled his schedule or conditions of employment, determined his rate and method of payment, or maintained any employment records with respect to him. (*See generally* Compl.); *see also Bernstein v. Silverman*, 2024 U.S. Dist. LEXIS 135771, at *99 (N.D.N.Y. Jul. 31, 2024) (dismissing state labor law claims, under an identical economic realities test, because there were "no allegations that [Defendant] hired [Plaintiff] or had the power to terminate her employment, that it determined the rate of her compensation, or that it maintained employment records on her"). This is especially true regarding Defendant Dunham, who Plaintiff admits is in-house counsel for the Company and was not in his direct reporting structure. (*See* Compl. at ¶ 74). As such, Plaintiff cannot maintain FMLA claims against the Individual Defendants.

## VII. PLAINTIFF SHOULD NOT BE ALLOWED TO FURTHER AMEND, AND DISCOVERY SHOULD BE STAYED

### A. Plaintiff Should not be Granted Further Leave to Amend as Amendment Would be Futile

The Court has already granted Plaintiff leave to amend and further noted that "Plaintiff will not be given any further opportunity to amend the complaint to address issued raised by the motion to dismiss." (ECF No. 12). Accordingly, Plaintiff should not be permitted to amend his pleading a second time. However, to the extent that Plaintiff may request leave to further amend, such leave should be denied.

Although Fed. R. Civ. P. 15(a) instructs that leave to amend a complaint should be freely given when justice so requires, it is equally "well established that leave to amend a complaint need not be granted when amendment would be futile." *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003); *Cuoco v. Moritsugu*, 22 F.3d 99, 112 (2d Cir. 2000) ("[t]he problem with [plainitff's] causes of action is substantive; better pleading will not cure it… Such a futile request to replead should be denied."). Here, the majority of Plaintiff's claims cannot be salvaged by further amendment. Specifically, (1) his NYPFL claim cannot be adjudicated by this Court as a matter of law; (2) his FMLA claim fails because the undisputed record shows that his termination was not temporally proximate to any protected activity; (3) documents incorporated by reference foreclose any breach of contract theory; and (4) this Court lacks jurisdiction over Defendant Dunham.

Therefore, the Court should deny any request to amend given the futile nature of amendment.

### B. Discovery Should be Stayed Pending Defendants' Motion to Dismiss

Here, the Court has not ordered that the parties file a case management plan, nor has Plaintiff sought any discovery. However, out of an abundance of caution, Defendants pre-emptively seek a stay of discovery.

Defendants' motion to dismiss is completely dispositive of the claims in the Complaint. Although a pending dispositive motion does not, per se, require a stay of discovery, a court may grant a motion to stay of discovery "[u]pon a showing of 'good cause.'" *Pappas v. City of New*

*York*, No. 23-cv-06010 (LJL), 2024 U.S. Dist. LEXIS 14171, at *2 (S.D.N.Y. Jan. 26, 2024) (quoting Fed. R. Civ. P. 16(b)(4)). A court may consider the following factors: "(1) whether the defendant has made a strong showing that plaintiffs' claim lacks merit; (2) the breadth of the requested discover and the burden of responding to it; and (3) the risk of unfair prejudice to the party opposing the stay." *Joglo Realties, Inc. v. Dep't of Envtl. Conversation of N.Y.*, No. 16-cv-1666 (ARR) (CLP), 2016 U.S. Dist. LEXIS 195745, at *4 (E.D.N.Y. Oct. 17, 2016) (internal quotations omitted).

Defendants' motion to dismiss raises arguments that are "likely to succeed on the merits and, at a minimum, present[] substantial grounds for dismissal." *Cota v. Art Brand Studios, LLC*, No. 21-cv-1518 (LJL), 2022 U.S. Dist. LEXIS 45084, at *2 (S.D.N.Y. Mar. 14, 2022). Should the Court grant Defendants' motion to dismiss, it will resolve the case. Engaging in discovery while Defendants' motion to dismiss is pending will result in the unnecessary and wasteful expenditure of time, money, and resources. *See* Fed. R. Civ. P. 1. Furthermore, "there is no reason to believe that Plaintiff[] would suffer prejudice for the short period of time… necessary… to rule on the motion." *Cota*, 2022 U.S. Dist. LEXIS 45084 at *3. Therefore, a stay of discovery is appropriate here.

**CONCLUSION**

For the reasons set forth above, Defendants ask that this Court enter an order dismissing Plaintiff's Amended Complaint in its entirety, with prejudice, and granting such other and further relief as the Court may deem just and proper.

Dated: February 11, 2026
New York, New York

LITTLER MENDELSON, P.C.

By: */s/ Devjani H. Mishra*

Devjani H. Mishra
René L. Macioce
LITTLER MENDELSON, P.C.
900 Third Avenue
New York, New York 10022.3298
Telephone: 212.583.9600
Facsimile: 212.832.2719
dmishra@littler.com
rmacioce@littler.com

*Attorneys for Defendants Oscar Health, Inc., Will Dunham, and David Byttow*